# Richmond.

## STANDARD ACCIDENT INSURANCE COMPANY V. WALKER.

March 18, 1920.

1. ACCIDENT INSURANCE—*Homicide—Right to Recover on Policy.*— In the absence of any provision in an accident policy relieving the company from liability in case of death by homicide, the company is clearly liable where insured was killed by his son, although there was bad feeling between the father and son, and the homicide was a crime which resulted from this bad feeling. Such a killing is an accidental killing by violence, for which the company is liable, so far as the deceased and the beneficiary, the deceased's wife, are concerned.

2. APPEAL AND ERROR—*Objections not Raised Below—Accidental Killing.*—In an action on an accident policy, the company for the first time on appeal sought to show that the beneficiary of the policy had some guilty previous knowledge of her son's alleged intention to murder his father, the insured.
  *Held:* That the point was raised too late.

3. ACCIDENT INSURANCE—*Homicide—Guilty Knowledge of Beneficiary.*—In an action on an accident policy, evidence that insured's son after killing him said to his mother, the wife of insured and the beneficiary in the policy, "I have got him," and that his mother replied, "I told you not to do that," is entirely insufficient to show guilty knowledge or participation on the mother's part.

4. INSURANCE—*Construction of Contract Against Company.*—Insurance contracts being prepared by the insurer, the conditions therein being conditions intended to cause a forfeiture of the policy, are construed most strongly against the insurer.

5. ACCIDENT INSURANCE—*Construction of Policy—Condition as to Employment—Case at Bar.*—The occupation of the insured in an accident policy was that of contractor, whose chief duty was to supervise the work of his servants in brick construction, although he sometimes actually laid bricks, for the purpose of showing inexpert brick layers how the work was to be done.
  *Held:* That his representation that the duties of his occupation were fully described as "Proprietor—supervising only," was

not a false representation which induced the company to give him a preferred classificaton. He was, in fact, a preferred risk, and received the classification to which he was entitled.

6. ACCIDENT INSURANCE—*Construction of Policy—Condition as to Employment—Case at Bar.*—That one holding an accident policy under a preferred classification might nevertheless be injured in an occupation classed by the company as more hazardous was foreseen and provided for in the policy. If the insured in the instant case had lost his life in the pursuit of a more hazardous business then perhaps the company could have taken advantage of the provision referred to; but inasmuch as his death was not caused by the pursuit of a more hazardous occupation, but was the result of homicide, the clause had no application.

7. ACCIDENT INSURANCE—*Othr Insurance.*—An applicant for accident insurance declared that he had no other accident or sickness insurance as enumerated. The applicant failed to mention that he was a member of a social club, the members of which, among other privileges, were entitled to a weekly sick benefit of $4, and to report that his wife, without his knowledge, had subsequently taken out a weekly sick benefit policy of $5 a week in another company.

  *Held:* That under Code of 1904, sec. 3344a, as modified by Code of 1919, sec. 4220, these omissions of the applicant, without any willful purpose to deceive or defraud the company, did not avoid the policy so far as death from accident was concerned.

8. INSURANCE—*Disclosures by Applicant—Materiality.*—A fair test of the materiality of a fact is found in the answer to the question whether reasonably careful and intelligent men would have regarded the fact communicated at the time of effecting the insurance as substantially increasing the chances of the loss insured against, so as to bring about a rejection of the risk or the charging of an increased premium.

9. APPEAL AND ERROR—*Reversal.*—Under Code of 1919, sec. 6363, the Supreme Court of Appeals, even if it has a doubt as to the correctness of the conclusion of the trial judge, will not set the judgment aside, unless it appears that it is plainly wrong or without supporting evidence.

Error to a judgment of the Law and Equity Court of city of Richmond, in an action of assumpsit. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*L. O. Wendenburg,* for the plaintiff in error.

*Smith & Gordon* and *J. T. Hewin,* for the defendant in error.

PRENTIS, J., delivered the opinion of the court.

The question in this case is whether or not the Standard Accident Insurance Company of Detroit, Mich., Inc., is liable to Maggie L. Walker for the amount of an accident insurance policy upon the life of her husband, Armistead Walker, who was killed by their son who apparently mistook him for a burglar. A jury was waived in the trial court, and all matters of law and fact having been submitted to the judge, there was a judgment in favor of the plaintiff against the company.

[1] The first assignment of error is based upon the refusal of the court to permit the introduction of evidence to the effect that there was bad feeling between the father and son, and that the homicide was a crime which resulted from this bad feeling. It is conceded, however, that whether this be or not, it constitutes no valid defense, so far as the deceased and the beneficiary are concerned. Such a killing is an accidental killing by violence, for which the company is liable under its policy. In the absence of any provision in the policy relieving it in such a case, the company is clearly liable by the great weight of authority. 14 R. C. L., sec. 437, p. 1260; *Richards* v. *Travelers' Ins. Co.,* 89 Cal. 170, 26 Pac. 762, 23 Am. St. Rep. 455; *Accident Ins. Co. of North America* v. *Bennett,* 90 Tenn. 256, 16 S. W. 723, 25 Am. St. Rep. 685; *Button* v. *American Mut. Accident Ass'n,* 92 Wis. 83, 65 N. W. 861, 53 Am. St. Rep. 900; Notes, 30 L. R. A. 207-8; and 8 Am. St. Rep. 756.

[2, 3] The company, however, apparently for the first

time in this court, for there was no suggestion of it as a defense in the trial court, also seeks to show that the beneficiary, the plaintiff, had some guilty previous knowledge of her son's alleged intention to murder his father. This claim is based upon the refusal to allow the defendant to prove that the killing was not accidental but intentional on the part of the son by showing that immediately after the killing he came down stars and said to his mother: "I have got him," or "I have shot him," and his mother replied: "I told you not to do that." We are of opinion that this point—that is, the guilty knowledge of the mother —is not only raised too late, but that the evidence recited, which is relied upon to show such guilty knowledge or participation on her part is entirely insufficient for that purpose. As stated, there was no such claim or allegation made against the plaintiff at any time during the trial of the case, nor is there any suggestion that either the son or the mother were ever charged with the crime by the public authorities, while it appears that the coroner of the city of Richmond reported the homicide as accidental. The assignment, therefore, is clearly without merit.

[4-6] 2. The second ground of error is based upon the statements or warranties in the policy showing the occupation of the insured. He stated that he was a member of the firm of Walker Brothers, whose business was that of contractors, and that the duties of his occupation are fully described as "Proprietor—supervising only." The evidence shows that he was a contractor, doing a substantial business; that his profits were estimated at from $175 to $200 a month; that he frequently had several houses under construction at the same time; that he performed the duties which are usually performed by contractors for brick work, which involved the making of contracts, the buying and assembling of material, the employment of journeymen bricklayers to do the actual work, supervision of the work

as it progressed, and that at times when the bricklayers were not sufficiently expert to understand or to execute the plans that he would take the trowel and lay bricks for the purpose of showing them how the work was to be done —this especially with reference to laying off foundations, constructing the corners accurately, and setting window and door frames. It is claimed for the company that, because he did actually lay bricks under these circumstances, he was not entitled to a preferred class rating, that he should have been classed as a journeyman bricklayer, which is a more hazardous occupation, and that if he had been thus classified as a bricklayer instead of as a contractor he could not have secured such a large policy, and that the premium rate would have been higher.

In considering a question of this sort, it must be borne in mind that it has long been determined by the courts, and we believe without dissent, that such contracts, being prepared by the insurer, the company, the conditions therein being conditions intended to cause a forfeiture of the policy, are construed most strongly against the company. So construed in this case, in connection with the testimony offered by the plaintiff (though there is some conflict) it is perfectly clear that the occupation of the assured was that of contractor, whose chief duty was to supervise the work of his servants in brick construction, and although in the performance of his duties as a contractor, in the way in which contractors generally perform their duties, he actually laid bricks, in connection with his supervision, that this was merely incidental and customary, and would not have changed his classification. It is also apparent that he made no false representation as to his occupation which induced the company to give him a preferred classification. He was, in fact, a preferred risk and received the classification to which he was entitled. That one holding a policy under a preferred classification might nevertheless be injured in

an occupation classed by the company as more hazardous is foreseen and provided for in Article 9 of this policy, which provides that if such a one is injured in some more hazardous occupation, the company's liability shall be reduced to such proportion of the principal sum as the premium paid will purchase at the rate fixed by the company for such increased hazard. If the assured here had lost his life in the pursuit of some more hazardous business, then perhaps the company could have taken advantage of the clause above referred to, but inasmuch as his death was not caused by the pursuit of any more hazardous occupation, the clause has no application. We are clear in our view that this assignment is also without merit.

[7, 8] 3. The policy also provided for weekly payments in case of accident or sickness. Walker had stated that his income per week exceeded the gross amount of weekly indemnity under all policies carried by him, and also that he had "no accident or sickness insurance issued by stock companies, assessment or fraternal associations, except as follows: St. Luke, $3.00; Odd F., $8.00; So. Aid, $5.00; Rich. Benf., $4.00." At that time the assured was a member of a local organization known as the Independent Beneficial Club, Richmond, Va., the members of which, among other privileges, were entitled to a weekly sick benefit of $4.00, and this was not disclosed to the agent of the company.

As has been indicated, when an insurance company has received its premiums, its efforts to escape liability when the contingency upon which its liability is created happens, are closely scrutinized. This organization was, as its name indicated, a social club; its membership was limited; no one could be admitted against whom there were three adverse votes; no policies were issued; and we are asked to say, that because the assured failed to report his membership in this club, therefore the policy insuring his beneficiary against his accidental death by violence shall be for-

feited. It may well be doubted whether his membership in such an organization would ever occur to the average man who was asked to state what policies he held providing for accident or sickness insurance issued by stock companies, assessment or fraternal associations. It is said by one witness in this case that the weekly benefits provided for in this club were frequently refused by its well-to-do members.

Then, in addition to this it appears that his wife, several years after this accident policy was secured, took out a weekly sick benefit policy in the Home Beneficial Association, which provided for a weekly benefit of $5.00, and it is claimed that this also forfeited the policy. The evidence shows that it had not been procured at the time this accident policy was issued, and that the assured did not know of its procurement for a long time thereafter, for it had been taken out by his wife, she having signed the application, paid all the premiums, and he had no information about it until a little over a year before his death. It is urged that his failure to disclose the existence of this policy when he paid his last annual premium for the accident policy bars any recovery in this action.

The question cannot be determined without a consideration of Code 1904, sec. 3344-a, as modified by Code 1919, sec. 4220. The provision, as it existed before the new Code became effective, reads thus: "No answer to any interrogatories made by an applicant for a policy of insurance shall bar the right to recover upon any policy issued upon such application by reason of any warranty in said application or policy contained, unless it be clearly proved that such answer was wilfully false or fraudulently made or that it was material."

There is no word or suggestion in the testimony from which it can be maintained that the failure to make these disclosures was because of any wilful purpose to deceive or defraud the company. Whether or not they were ma-

terial is a question about which there may be a fair difference of opinion. The cases which could be cited are numerous, for similar questions have frequently been presented to the courts. It may be said, however, that the result of these decisions leads to this conclusion, as stated in 14 R. C. L., section 202, page 1022: "A fair test of the materiality of a fact is found in the answer to the question, whether reasonably careful and intelligent men would have regarded the fact communicated at the time of effecting the insurance as substantially increasing the chances of the loss insured against so as to bring about a rejection of the risk or charging an increased premium." Considering the facts of this case, and giving the assured the benefit of all fair doubts, it seems to us perfectly clear that this man was a desirable risk, and that the company would have so regarded him, even if the disclosures had been made with the strictest accuracy. The reason the company desired to know the amount of the weekly benefits which the assured would receive was to determine whether it would be to his advantage to feign sickness rather than to keep on with his work. This consideration has no relation whatever to the danger of death from accident. It might have led to some reduction of the weekly benefit to be paid by this company, or to some special waiver with reference thereto, but that it had the slightest effect upon the desire of the company to assume the risk of insuring this man against accidental death is hardly probable. *Continental Ins. Co.* v. *Kasey,* 25 Gratt. (66 Va.) 272, 18 Am. Rep. 681; *Penn Mut. L. Ins. Co.* v. *Mechanics' Savings Bank,* 72 Fed. 413, 19 C. C. A. 286, 38 L. R. A. 33, 70.

[9] As the case comes to us then, bound as we are by Code 1919, section 6363, it is clear that even if we had any doubt of the correctness of the conclusion of the trial judge, we are forbidden to set the judgment aside unless it appears that it is plainly wrong or without supporting evidence. Our view is that it is plainly right.

*Affirmed.*