## Richmond

BUCKEYE UNION CASUALTY COMPANY V. DOUGLAS STRUAN ROBERTSON.

March 7, 1966.

Record No. 6116.

Present, All the Justices.

G. *Kenneth Miller* (*James I. Moyer*: *May, Garrett, Miller, Newman & Compton*, on brief), for the plaintiff in error.

W. H. *Jolly* (*Kime & Jolly*, on brief), for the defendant in error.

I'ANSON, J., delivered the opinion of the court.

Buckeye Union Casualty Company, hereinafter referred to as Buckeye, filed a motion for a declaratory judgment to determine the rights of the parties in and to a certain automobile insurance policy issued by Buckeye to the defendant, Douglas Struan Robertson, and specifically requested the trial court to declare the policy void and rescinded. A jury trial was waived and the court, after hearing the evidence *ore tenus*, held that the defendant had coverage under the policy and that it had not been rescinded. To this judgment plaintiff is here on a writ of error.

Buckeye contends that the trial court erred (1) in finding that defendant's representation as to the ownership of the car was not a misrepresentation material to the risk assumed; and (2) in not requiring the proper foundation to be laid before propounding a hypothetical question.

The material facts are not in dispute and may be summarized as follows:

In early 1962 defendant's parents, who were residing in Kobe, Japan, decided to give him an automobile for his use while he was a student at Roanoke College, Salem, Virginia. As a result thereof, defendant negotiated the purchase of a 1962 Corvair automobile from Modern Chevrolet Sales, Inc., of Honaker, Virginia, and the purchase price and cost of insurance and license plates were paid by defendant's mother. Defendant was to have exclusive possession and use of the automobile during his last two years of college, and when his mother returned to the United States two years hence he was to turn it over to her. Defendant discussed the arrangement with Harry Rutherford, Jr., an officer and agent of Modern Chevrolet, who was also in the insurance business, and not being familiar with the procedures for titling the vehicle and obtaining insurance he turned "the whole thing" over to Rutherford to handle for him.

Rutherford filled out the application for a title to the automobile to be issued in the name of defendant's mother, and it was mailed to her in Japan. She signed the application on March 12, 1962, and the title was later registered in her name.

On March 19 Rutherford filled out an application for insurance on the car, to be issued in defendant's name, which defendant signed without reading. It showed, among other things, that applicant was 19 years of age, that the car would be principally garaged in Salem,

Roanoke County, Virginia, and that he would be the "100% operator" of the car. On the application, printed in bold type, there was a statement that "Applicant cannot secure coverage on a vehicle unless he is or soon will be the registered owner," but Rutherford did not mention this to defendant.

Rutherford turned the application for insurance over to G. W. Harrington, a general insurance agent. Buckeye was one of the companies he represented. After obtaining additional information from Rutherford as to the make and motor number of the car to be insured, Harrington signed the certification at the bottom of the application stating that he had explained to the applicant the provisions of the "Assigned Risk Plan for the State." However, the evidence shows that he had not talked with the defendant. Harrington forwarded the application, accompanied by a check for the premium, to the manager of the Assigned Risk Plan and on March 22, 1962, the risk was assigned to Buckeye. Shortly thereafter Buckeye issued its policy to defendant, which was signed by Harrington as its authorized agent. Buckeye then had an investigation made as to the character and habits of the defendant. The investigator reported that defendant's parents were residing in Japan; that defendant would have the sole possession of the car and be its principal operator; and that his driving record was excellent.

On November 23, 1962, while defendant was operating the automobile in New York, he was involved in an accident. Buckeye then learned that the title to the car was registered in defendant's mother's name, and, after obtaining permission from the manager of the Assigned Risk Plan, notified defendant that it had rescinded the insurance contract and returned to him the amount of the premium paid. Defendant refused to accept the rescission and returned Buckeye's check.

Buckeye presented evidence that a male person under 21 years of age was a "poor risk," and that it would not have issued the policy to defendant had it know that the title to the car was not in his name. However, its evidence also shows that the rates and premium paid would have been the same even if the car had been titled in defendant's name.

Buckeye says defendant's representation that he was or soon would be the registered owner of the automobile was false; that the misrepresentation was material to the risk assumed; that defendant did not satisfy the condition of ownership required to be eligible for

an assigned risk policy; and that it was entitled to rescind the policy at its option.

The policy here in question was issued under what has become known as the Voluntary Assigned Risk Plan (Code § 38.1-264, as amended, 1953 Repl. Vol.), which grants automobile liability insurance to persons who are classified as "poor risks" and hence unable to secure it through ordinary means. An insurer issuing a policy under this plan may interpose the defense of a misrepresentation which is material to the risk. It is distinguishable from the "Statutory Risk" plan, under which companies issuing policies of insurance under the provisions of Code § 46.1-497, et seq., as amended, 1958 Repl. Vol., are not permitted, under Code § 46.1-511, to assert a policy defense of misrepresentation even though admittedly material to the risk. For a comprehensive discussion of the distinctions between the two plans see the opinion of Mr. Justice Carrico in *Insurance Company* v. *Saccio*, 204 Va. 769, 775-779, 133 S.E. 2d 268, 272-275.

Code § 38.1-336 provides that no statement, declaration or description in any application for insurance shall be construed as a warranty, or be allowed to bar a recovery on the policy, unless it is "clearly proved" that such answer or statement was both false and material to the risk. *Green* v. *Southwestern Vol. Ass'n*, 179 Va. 779, 787, 20 S. E. 2d 694, 697; *Scott* v. *State Farm Mut. Auto. Ins. Co.*, 202 Va. 579, 584, 118 S. E. 2d 519, 523.

The burden of proving the materiality of a misrepresentation is upon the insurer. *Scott* v. *State Farm Mut. Auto. Ins. Co., supra,* 202 Va. at p. 584, 118 S. E. 2d at p. 523.

In *Standard Acci. Ins. Co.* v. *Walker,* 127 Va. 140, 147, 102 S. E. 585, 587, we said:

" 'A fair test of the materiality of a fact is found in the answer to the question, whether reasonably careful and intelligent men would have regarded the fact communicated at the time of effecting the insurance as substantially increasing the chances of the loss insured against so as to bring about a rejection of the risk or charging an increased premium.' "

While there was evidence that Buckeye would have rejected the risk if the application for insurance had disclosed that defendant's mother was the registered owner of the automobile, it presented no evidence to show that the risk or hazard was increased or that a greater premium would have been charged as a result thereof. In-

deed, Buckeye's evidence shows that the premium charged would have been the same even if the registered title had been in defendant's name. Buckeye issued the policy with full knowledge of the fact that defendant would have exclusive possession of and control over the automobile and be its sole operator. Its investigation disclosed that defendant's parents were residing in Japan, and obviously they would not be operating the car. Defendant was the beneficial owner of the car and had every indicium of ownership even though the registered title was not in his name. We said, in *United States Cas. Co.* v. *Bain*, 191 Va. 717, 720, 62 S.E. 2d 814, 815, and *Scott* v. *State Farm Mut. Auto. Ins. Co., supra*, 202 Va. at p. 582, 118 S. E. 2d at p. 522, that the title certificate was only prima facie evidence of ownership, and that the presumption of ownership evidenced by the certificate of title may be overcome by evidence that the true owner of the vehicle is a person other than the one in whose name the vehicle is registered. The fact that defendant was not the registered owner of the car was a technicality which was immaterial under the facts and circumstances here. Thus defendant's failure to disclose that the car was registered in his mother's name was not as a matter of law material to the risk assumed by Buckeye.

The second paragraph of § 9 of the "Virginia Automobile Assigned Risk Plan" provides that an applicant shall be considered for assignment upon making application in good faith, and the application shall be considered in good faith if the form does not contain incorrect or misleading statements "wilfully" made.

The evidence shows that the defendant answered the questions in the application in good faith and he did not wilfully make an incorrect or misleading statement in order to become eligible for a policy of insurance under the Voluntary Assigned Risk Plan. If there was any concealment under the facts and circumstances here, he was not responsible for it. It must also be remembered that defendant was not aware of the effect of the insurance being issued in his name while the car was registered in his mother's name.

The evidence supports the finding of the trial court that defendant was not guilty of misrepresentation of a fact which was material to the risk; that the policy was in full force and effect when defendant's car was involved in an accident and that it was not later rescinded.

There is no merit in Buckeye's contention that the court erred in permitting counsel for the defendant to propound a hypothetical

question, without laying a proper foundation, for the purpose of establishing the eligibility of Mrs. Robertson to a policy under the Voluntary Assigned Risk Plan.

When counsel objected to the hypothetical question it was rephrased, and then counsel objected on the ground that such evidence was not relevant. We agree with counsel that it was not material to the issue here, but if it was error, it was harmless and did not constitute reversible error.

For the reasons stated, the judgment is

*Affirmed.*

CARRICO and GORDON, JJ., concurring in part and dissenting in part.

CARRICO, J., concurring in part and dissenting in part.

I concur in the result reached by the majority, that is, to affirm the judgment of the trial court, but I cannot agree with the holding of the majority that the misrepresentation here involved was not material to the risk insured against.

The representation made by the defendant, in his application for insurance under the Virginia Automobile Assigned Risk Plan, was that he was or soon would be the registered owner of the vehicle to be covered by the policy. That statement was false.

The uncontradicted evidence was that, had it been known that title to the vehicle was in the mother's rather than in the defendant son's name, the application would not have been assigned by the supervisor of the Assigned Risk Plan because "the applicant was not eligible" and "the policy could not have been issued without the assignment." It was also uncontradicted that Buckeye "would not have issued the policy if they had known he [the defendant] was not the registered owner." It was undisputed that Buckeye would not have insured the defendant voluntarily because a male driver under twenty-one years of age "is on our prohibited list . . . is categorically excluded . . . the companies feel that a male driver under 21 is a poor risk."

When Buckeye proved that it would have rejected the risk if furnished with the true information, it met the number one, prime test of materiality. It is completely beside the point whether the same or a different rate or premium would have applied had the vehicle,

in fact, been registered in the defendant's name. And we should not speculate, as the defendant would have us do, as to what would have taken place if the application had been in the name of the mother, the real registered owner.

The inescapable fact in this case is that no policy would have been issued without the title in the defendant's name. Eligibility for insurance, not rate or premium, is of first and exclusive importance in determining materiality here.

Since it was conclusively shown that, had there been a true disclosure of the facts, the defendant's application would not have been assigned under the Assigned Risk Plan and that Buckeye, in any event, would have rejected the risk, it necessarily follows, as a matter of law, that the misrepresentation was material to the risk.

I would base my decision solely upon the proposition that the misrepresentation, although material to the risk, was not willfully made.

As was noted in *Insurance Company* v. *Saccio*, 204 Va. 769, 775-776, 133 S. E. 2d 268, there are, in Virginia, what may be described as three classes of automobile liability risks.

The first class is composed of the "desirable risks," that is, those who are eligible for insurance and who desire, but are not legally compelled, to procure coverage and to whom the insurance carriers are fully willing to grant insurance. If a misrepresentation material to the risk is made by a member of this class, the insurance contract is rendered void. *State Farm Mutual* v. *Butler, Adm'r*, 203 Va. 575, 578, 125 S. E. 2d 823. And it makes no difference whether the misrepresentation be willfully or innocently made. *Inter-Ocean Ins. Co.* v. *Harkrader*, 193 Va. 96, 100, 67 S. E. 2d 894.

The second class is composed of the "statutory risks," that is, those who may or may not desire but who, in any event, are legally compelled to procure liability insurance or to furnish other proof of financial responsibility, pursuant to the provisions of the Motor Vehicle Safety Responsibility Act. Code, §§ 46.1-388 to 46.1-514. The insurance carriers doing business in this state are compelled by law to provide coverage to the "statutory risks," when such risks are assigned to them by the State Corporation Commission pursuant to what is known as the Virginia Statutory Assigned Risk Procedure. Code, §§ 46.1-497 to 46.1-503.

If a misrepresentation, even though it is material to the risk and even though it is willful, is made by a member of the "statutory

risk" class, the carrier cannot assert such misrepresentation as a defense, once the policy is certified to the Commissioner of Motor Vehicles. Code, §§ 46.1-509 and 46.1-511 (f).

The third class is composed of the "poor risks," that is, those who desire, but are not legally compelled, to procure liability insurance but who, for one reason or another, such as age as was the case with the defendant here, are unable to procure coverage through ordinary means.

The Virginia Automobile Assigned Risk Plan, or the Voluntary Plan, under which the policy before us was issued, was devised by the carriers to provide relief to the "poor risk" class.

The plan is a voluntary agreement of all of the carriers licensed to write direct automobile liability insurance in Virginia, entered into pursuant to the authority of Code, § 38.1-264. One of the provisions of that agreement is that an applicant for assignment under the Plan "shall be considered for assignment upon making application in good faith to the Plan. The applicant shall be considered in good faith if he reports all information of a material nature, and does not *wilfully* make incorrect and misleading statements in the prescribed application form." [Emphasis added.]

Thus, the carriers, by their agreement, have established a different rule with respect to misrepresentations made by an applicant for assignment under the Voluntary Plan—a rule which falls midway between the rule applicable to "desirable risks" and the one applicable to "statutory risks." While a misrepresentation, if material, whether willfully or innocently made, is available to the carrier as a defense against a policy issued to one who is a "desirable risk," such a misrepresentation is not available at all against a policy issued to a "statutory risk." But as to a misrepresentation made by an applicant under the Voluntary Plan, it is available as a defense, according to the terms of the Plan, only if it is made willfully.

The carriers are bound by their agreement setting up the Voluntary Plan. As a result of it, they are able to secure considerable additional business at rates, premiums and surcharges greatly in excess of what may be charged "desirable risks." And the agreement, doubtless, is but one more effort on the part of the carriers to forestall the enactment, in Virginia, of what is to them an unwanted compulsory insurance law, existent in some states.

The carriers, by their agreement, established willfullness as the test of defensibility, cancelability and rescindability with respect to

misrepresentations in applications filed under the Voluntary Plan. Having laid down that test as the ground rule, relief ought not be granted to a carrier against a policy issued under the Voluntary Plan unless it appears clearly that the misrepresentation was willful.

The majority opinion states, "If there was any concealment under the facts and circumstances here he [the defendant] was not responsible for it." I disagree with that statement. Certainly the defendant was responsible for what he did. But I agree that his misrepresentation, although chargeable to him and albeit material, was innocently, and not willfully, made. In fact, Buckeye does not contend, in its briefs, that there was any willfulness on the part of the defendant. That being true, the evidence did not meet the test of the rule established by the Voluntary Plan and Buckeye should not escape liability under its policy. For that reason, and that reason alone, I would affirm the judgment of the trial court.

GORDON, J., concurs in this opinion.