Present:  All the Justices

COMMERCIAL UNDERWRITERS INSURANCE COMPANY

v.  Record No. 000474    OPINION BY JUSTICE ELIZABETH B. LACY
                                January 12, 2001
HUNT & CALDERONE, P.C., ET AL.


              FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
                        Edward L. Hubbard, Judge

     This appeal arises from a declaratory judgment action

regarding coverage under a professional liability, claims made

insurance policy.

     On May 8, 1997, Hunt & Calderone, P.C. (H&C), an

accounting firm, filed a renewal application for professional

liability insurance with Commercial Underwriters Insurance

Company (CUIC).  On May 9, Dian T. Calderone, a partner in

H&C, realized that she had missed a filing deadline for one of

the firm's clients, Michael Atalay.  Calderone knew that her

error could potentially result in a loss of a $125,000 tax

credit for the client, but she did not think that a claim

would result because she was told by an administrator of the

government tax credit program that sufficient funds would

likely be available after all the timely applications had been

processed.  Furthermore, when told of the error, Atalay said

he was satisfied with the assurances made by the government

administrator.  H&C did not inform CUIC of the error during

the time the insurance application was pending.

After the CUIC policy became effective, H&C learned that sufficient funds were not available for Atalay's tax credit. In August 1997, Atalay notified H&C that he intended to hold H&C responsible for the lost tax credit. Because the CUIC policy was a claims made policy, H&C requested coverage from CUIC for Atalay's claim. CUIC denied coverage to H&C for the claim and refused to provide a defense for H&C in an action subsequently filed by Atalay against H&C. CUIC based its position on three separate grounds: (1) H&C failed to meet a condition precedent of the policy which required that, at the inception of the policy, H&C have no knowledge of an error or any other basis to reasonably anticipate a claim that would be covered by the policy; (2) the claim fell under an exclusion of the policy which disallowed coverage for a claim arising out of any error likely to give rise to a claim of which the insured had knowledge or a reason to anticipate prior to the policy's inception; and (3) H&C's failure to inform CUIC of Calderone's error during the pendency of the application constituted a material misrepresentation, voiding the policy.

H&C filed a motion for declaratory judgment, seeking a declaration that CUIC was required to defend the claim and provide coverage under the policy. The trial court entered judgment in favor of H&C, holding that H&C provided sufficient evidence to show that it complied with the condition precedent

to establish coverage, that coverage was not foreclosed under the policy exclusion, and that the policy was not void based on a misrepresentation of a material fact in the application. We awarded CUIC an appeal.

CUIC's five assignments of error present two primary issues. The first is whether the policy was void because H&C failed to inform CUIC of Calderone's error prior to the inception of the policy. The second is whether, prior to the inception of the policy, H&C had any basis to reasonably anticipate that Calderone's error would result in a claim otherwise covered by the policy. We will address these issues in order.

I.

Question number ten of the insurance policy application asked, "After inquiry, does the Applicant . . . have knowledge of any actual or alleged act, error, omission or circumstance which may result in a claim being made against them or any other basis to reasonably anticipate a claim being made against them." H&C answered no to this question. The application also contained a notice that the Applicant had a continuing duty to update the insurance company, in writing, of any change to the application that may occur between the filing of the application and the proposed effective date. Finally, the policy itself recited in several places that the

3

representations made in the application were material to the acceptance of the risk and the underwriting of the policy.

Based on these policy provisions, CUIC asserts that the policy was void because H&C failed to notify CUIC of Calderone's error in a timely fashion and that such failure was a material misrepresentation as stated in the policy. The trial court, relying on Harrell v. North Carolina Mutual Life Insurance Co., 215 Va. 829, 213 S.E.2d 792 (1975), held that even if H&C's failure to update CUIC did constitute a misrepresentation, CUIC failed to prove that it was a material misrepresentation.

We have construed Code § 38.2-309[1] and its predecessors to require an insurance company contesting a claim on the basis of an insured's alleged misrepresentation to show, by clear proof, two facts: (1) that the statement on the application was untrue; and (2) that the insurance company's reliance on the false statement was material to the company's decision to undertake the risk and issue the policy. Harrell, 215 Va. at

---

[1] Code § 38.2-309 provides in pertinent part:

> No statement in an application [for an insurance policy] . . . made before or after loss under the policy shall bar a recovery upon a policy of insurance unless it is clearly proved that such answer or statement was material to the risk when assumed and was untrue.

4

831-32, 213 S.E.2d at 794-95. To prove the falsity is not sufficient; the company must prove clearly that truthful answers would have reasonably influenced the company's decision to issue the policy. See Mut. of Omaha Ins. Co. v. Echols' Adm'rs, 207 Va. 949, 953-54, 154 S.E.2d 169, 172 (1967)(defining "material").

We agree with the trial court that Harrell controls the case at hand. In Harrell, the applicant for a life insurance policy did not disclose that she had been hospitalized and had undergone operations for cancer numerous times during the five years prior to submitting her application. The application recited that her answers " 'are each material to the risk and that the Company believing them to be true will rely and act upon them.' " 215 Va. at 830, 213 S.E.2d at 794 (emphasis added). When cancer was found to be a cause of death and an investigation revealed her misrepresentations on the application, the insurance company denied the claim, relying upon the predecessor to Code § 38.2-309.[2]

At trial, the insurance company offered into evidence the application language quoted above and the testimony of several agents of the company, but not one agent was in a position to

---

[2] In Harrell, this Court engaged in an analysis of Code § 38.1-366, the predecessor to Code § 38.2-309. For the purposes of this appeal, the two statutes contain virtually identical language.

5

testify to the materiality of the misrepresentations.  This Court stated:

> While it is incredible that any responsible insurance company would have issued a policy of life insurance to Mrs. Foxx with knowledge that she had recently been released from a hospital after a major operation for carcinoma of the breast, and with knowledge that she had a history of other hospitalizations for cancer, we will not take judicial notice of this fact.  The burden of clearly proving the affirmative defense of materiality of a misrepresentation is not carried when the court, to find the fact, must resort to assumption and conjecture.

Harrell, 215 Va. at 833, 213 S.E.2d at 795-96 (first emphasis added).

Similarly, in this case, the only evidence of materiality CUIC offered was the policy itself, which recited in boilerplate language that the representations in the application were material and which language we assume is included in every policy issued by CUIC.  Such evidence is far from the clear proof required to show that truthful answers would have reasonably influenced CUIC's decision to issue the policy to H&C.  Accordingly, we conclude that the trial court did not err in holding that CUIC failed to meet its burden of proof on the question of materiality.

## II.

The second issue is also one of proof.  The policy provisions regarding a condition precedent and an exclusion involved a determination of whether it was reasonable for H&C

6

to anticipate or have any reason to anticipate that Calderone's error, made before the inception of the policy, would result in a claim under the policy.[3]  H&C had the burden to produce evidence that it met the terms of the condition precedent, whereas CUIC bore the ultimate burden of persuasion on this issue.  Erie Ins. Exch. v. Meeks, 223 Va. 287, 290-91, 288 S.E.2d 454, 456-57 (1982).  In addition, CUIC carried the burden to prove that the exclusion applied.  Va. Elec. & Power Co. v. Northbrook Prop. & Cas. Ins., 252 Va. 265, 270, 475 S.E.2d 264, 266 (1996).  The trial court found that H&C satisfied its evidentiary burden and CUIC did not.

David E. Hunt, a partner in H&C, and Calderone, both of whom are certified public accountants and testified in that capacity, stated that Calderone's error was not one which

_____

[3] Section I.A.2. of the policy provided:

> All of the following conditions must be satisfied before coverage will apply:
> . . . .
> 2.  the Insured had no knowledge of such actual or alleged act, error, omission, circumstance or Personal Injury or otherwise had no basis to reasonable [sic] anticipate a claim that would be insured by this Coverage Part at policy inception;

Section II.A., relating to policy exclusions, stated in pertinent part that coverage would not be provided for:

> any claim arising out of any actual or alleged act, error, omission, Personal Injury or circumstance likely

7

could reasonably be anticipated to result in a claim because the assurances by one of the tax credit program's administrators, Dan Girouard, justified a conclusion that funds would be available for Atalay despite the untimely filing of the application. Atalay also testified at trial that, although he was aware of Calderone's error, after talking with Calderone and Girouard, he believed the matter "would be okay." Atalay stated that he had no intention of filing a claim against H&C until July, when he learned that tax credits would not be available to him.

CUIC's only witness was Martha Shea Hollifield, Dan Girouard's supervisor. Hollifield testified that she recalled talking with Calderone about Atalay's application, but she did not recall telling Calderone funds would be available. The trial court found this evidence insufficient to rebut H&C's evidence that two certified public accountants had no reasonable basis to anticipate a claim from the facts in this case.

Although the trial court noted that H&C's testimony was self-serving, the court did not reject the testimony as incredible. Faced with H&C's testimony, CUIC had to provide evidence that would challenge the reasonableness of H&C's

to give rise to a claim of which an Insured had knowledge, or otherwise had reason to anticipate might

8

belief that no claim would arise.  The trial court did not require that such evidence be in the form of "expert testimony" as CUIC suggests.  Rather, the trial court suggested that evidence from "professionals in the field" would be needed to refute the evidence produced by H&C.  As stated by the trial court, CUIC simply failed to satisfy that burden.

Principles of appellate review require that we affirm determinations of fact made by the trial court unless there is no support for such determinations in the record.  Quantum Dev. Co. v. Luckett, 242 Va. 159, 161, 409 S.E.2d 121, 122 (1991).  Based on our review, we cannot conclude that this factual conclusion of the trial court is without support in the record.

For the above reasons, we will affirm the judgment of the trial court.

Affirmed.

---

result in a claim, prior to the inception of this policy.