**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

WESTPORT INSURANCE CORPORATION, a
Missouri Corporation,
                          *Plaintiff-Appellee,*

              v.

THE LYDIA S. ULRICH TESTAMENTARY
TRUST,
                          *Defendant-Appellant,*

              and                                    No. 01-2016

RICHARD S. MENDELSON, in his
capacity as Receiver of Craig
Dunbar; CRAIG DUNBAR; PATRICIA
LEIBIK; ARNOLD SENNHAUSER;
TARRANT LOMAX; THE ESTATE OF
PAUL RHODES; RHODES, DUNBAR &
LOMAX, CHARTERED,
                          *Defendants.*

WESTPORT INSURANCE CORPORATION, a
Missouri Corporation,
*Plaintiff-Appellee,*

v.

TARRANT LOMAX; RHODES, DUNBAR
& LOMAX, CHARTERED,
*Defendants-Appellants,*

and

THE LYDIA S. ULRICH TESTAMENTARY
TRUST; RICHARD S. MENDELSON, in
his capacity as Receiver of Craig
Dunbar; CRAIG DUNBAR; PATRICIA
LEIBIK; ARNOLD SENNHAUSER; THE
ESTATE OF PAUL RHODES,
*Defendants.*

No. 01-2430

WESTPORT INSURANCE CORPORATION, a Missouri Corporation,

*Plaintiff-Appellee,*

v.

THE LYDIA S. ULRICH TESTAMENTARY TRUST,

*Defendant-Appellant,*

and

RICHARD S. MENDELSON, in his capacity as Receiver of Craig Dunbar; CRAIG DUNBAR; PATRICIA LEIBIK; ARNOLD SENNHAUSER; TARRANT LOMAX; THE ESTATE OF PAUL RHODES; RHODES, DUNBAR & LOMAX, CHARTERED,

*Defendants.*

No. 01-2447

Appeals from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Gerald Bruce Lee, District Judge.
(CA-00-1457-A)

Argued: June 6, 2002

Decided: July 31, 2002

Before WIDENER and WILKINS, Circuit Judges, and
James H. MICHAEL, Jr., Senior United States District Judge
for the Western District of Virginia, sitting by designation.

Affirmed by unpublished per curiam opinion.

**COUNSEL**

**ARGUED:** Michael McGettigan, RICHARDS, MCGETTIGAN, REILLY & WEST, P.C., Alexandria, Virginia; William Michael Holm, WOMBLE, CARLYLE, SANDRIDGE & RICE, McLean, Virginia, for Appellants. Bryan George Schumann, BOLLINGER, RUBERRY & GARVEY, Chicago, Illinois, for Appellee. **ON BRIEF:** Ruth E. Goldwater McCoy, BOLLINGER, RUBERRY & GARVEY, Chicago, Illinois; Carol T. Stone, JORDAN, COYNE & SAVITS, L.L.P., Fairfax, Virginia, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Defendants-Appellants The Lydia S. Ulrich Testamentary Trust, et al. appeal from the district court's order granting summary judgment to Plaintiff-Appellee Westport Insurance Corporation ("Westport"). Jurisdiction in this court is invoked pursuant to 28 U.S.C. § 1291. After carefully considering the record in this case, the briefs, and the parties' argument, this court affirms the district court's ruling.

Attorney Craig Dunbar pilfered in excess of $800,000 from The Lydia S. Ulrich Trust, over which he had been appointed trustee, and used $400,000 of that to line the coffers of his former law firm, Rhodes, Dunbar, and Lomax ("RDL"). The embezzlement was uncovered in June, 1999, and Dunbar eventually pled guilty to mail fraud and consented to a civil judgment in the amount of money he embezzled.

Westport, which had issued a lawyers' professional liability policy to RDL, sought a declaratory judgment against the appellants in the Eastern District of Virginia. Specifically, Westport sought a declara-

tory judgment that it need not defend claims brought by the trust against RDL or against Tarrant S. Lomax, a partner at RDL. The district court held that Westport could rescind its policy to RDL because Dunbar had lied on the application form, and further held that, even if the policy remained in effect, claims brought against RDL or Lomax arising out of Dunbar's embezzlement would be excluded from coverage under the policy. *Westport Insurance Corporation v. Richard Mendelson et al.*, Order, No. 00-1457-A (E.D.V.A. July 9, 2001). Finding no error, we affirm.

## I.

Virginia law allows an insurer to rescind a policy if it is "clearly prove[n]" that an answer or statement in an application "was material to the risk when assumed and was untrue." Va. Code Ann. § 38.2-309 (Michie 1995)\*; *see also Commercial Underwriters Insurance Company v. Hunt & Calderone, P.C.*, 540 S.E.2d 491 (Va. 2001) (interpreting Va. Code § 38.2-309). On August 10, 1998, Dunbar, as president of RDL, endorsed a Lawyers Professional Liability Insurance Renewal Application on behalf of RDL. J.A. 156-57. Question 11 of the Application asked:

> Is the Applicant, its predecessor firms or *any* individual proposed for this insurance aware of any circumstance, act, error, omission or personal injury which *might be expected* to be the basis of a legal malpractice claim or suit that has *not* previously been reported to the firm's insurance carrier? If yes, please complete a Claim Information Supplement.

J.A. 157 (emphasis in original). Dunbar answered "no" to this question, without alerting Westport to his pilfering of funds from the trust, which began in June, 1993. J.A. 96. The appellants concede that Dunbar's answer to Question 11 was "material to the risk assumed," but argue that Dunbar's response was not "untrue."

---

\*Specifically, the statute provides that "[N]o statement in an application or in any affidavit made before or after loss under the policy shall bar a recovery upon a policy of insurance unless it is *clearly proved that such answer or statement was material to the risk when assumed and was untrue*. Va. Code Ann. § 38.2-309 (Michie 1995) (emphasis added).

The appellants contend that this case is like *St. Paul Fire & Marine Insurance Co. v. Jacobsen*, 48 F.3d 778 (4th Cir. 1995). In *Jacobsen*, a doctor who fraudulently injected his own sperm into his patients during artificial insemination procedures, rather than the sperm of the patient's husband or donor, had failed to disclose this misconduct when asked by his insurer (before he got caught): "Do you have knowledge of any pending claims or activities (including requests for medical records) that might give rise to a claim in the future?" *Id.* at 781. This court interpreted "activities" to mean "activities by third parties," rather than activities by the insured, and concluded that the doctor's answer to that question was not untrue.

The language in RDL's policy, "any circumstance, act, error, omission, or personal injury," cannot be given the same construction adopted in *Jacobsen*. It clearly applies to activities of the insured, indeed, the use of the word "circumstance" would include any set of facts of which the insured is aware that might be the basis of a legal malpractice claim or suit. Surely, Dunbar was at that time aware of at least "circumstances" that might, and almost certainly would, be "the basis of a legal malpractice claim or suit. . . ." Dunbar's answer to Question 11, therefore, was "untrue."

According to the appellants, however, *Jacobsen* also stands for the proposition that insurance applicants have no affirmative duty to self-report, even if the applicant was involved in criminal misconduct. Instead, the argument goes, the insurance applicant must only disclose information asked of him or her.

Even if the court were to adopt the appellants' argument, however, the conclusion would remain the same; Dunbar's answer to Question 11 would still be untrue. The insurance application asks for disclosure of any "circumstance . . . which might be the basis of a legal malpractice claim." Clearly, the embezzlement of over $800,000 is a circumstance that "might be the basis of a legal malpractice claim." In fact, the court cannot conceive of an instance where the pilfering of nearly one million dollars might not be the basis of a legal malpractice claim.

## II.

While the parties strongly argued the question of ambiguity in their respective briefs, and to a lesser extent during oral argument, the

whole thrust of the argument misses entirely the dispositive question; specifically, was Dunbar's answer to Question 11 "untrue?"

Dunbar responded "no" to Question 11 of the Renewal Application, a question that clearly requires a "yes" or "no" answer. J.A. 157. That Question 11 further provides that if the answer is "yes," the Applicant shall "please complete a Claim Information Supplement," is immaterial to the issue at bar. It was Dunbar's "no" answer to Question 11, an answer that is untrue and material to the risk assumed, that triggers Westport's right to rescind the policy pursuant to Va. Code § 38.2-309. If the Applicant's answer to Question 11 is "no," no obligation arises requiring the Applicant to turn to and complete the Claim Information Supplement.

To that end, whether the Supplement is ambiguous, it is in no way required to be completed by Dunbar, and any asserted ambiguity is immaterial to the disposition of this case. Nevertheless, in the interest of completeness, a brief discussion of the ambiguity issue follows.

The appellants contend that Question 11 is ambiguous, because the "Claim Information Supplement," which applicants must fill out if they answer "yes" to Question 11, asks for a

> [d]escription of alleged act, error, omission, or personal injury upon which *claimant* bases the *claim*. Include events leading to the *claim*. PLEASE DO NOT ATTACH SUMMONS AND COMPLAINT. Attach addendum if space below is insufficient.

J.A. 199 (emphases added). Because this supplemental question asks only for information about acts, errors, omissions, or personal injuries that are concerned with *claims* brought by *claimants*, and leaves no space for acts, *etc*. that might become a claim, the appellants contend this creates an ambiguity that must be construed against Westport.

When the entire insurance application is studied, however, there is no ambiguity. The first line in the Claim Information Supplement says, "This form must be completed in its entirety for each *claim or incident*." J.A. 199 (emphasis added). The form repeatedly asks for

information regarding the "claim/incident." There is no doubt, and no ambiguity, that the applicant must fill out a separate copy of the Supplement for each *incident* (such as fleecing money from a trust fund) that has not yet become a "claim." Even if this court accepted the appellants' argument, it would at most create an ambiguity in the Claim Information Supplement. There is no ambiguity in Question 11, despite its reference to the Supplement, and there can be no doubt that Dunbar's answer to that unambiguous question was "untrue."

Westport has "clearly prove[n]" that Dunbar lied on the application regarding a fact that was material to the risk assumed. The district court, therefore, correctly held that the policy may be rescinded. Having concluded that Westport may rescind the insurance policy, the court does not find it necessary to explore the exclusions contained in the policy.

*AFFIRMED*