**MINNESOTA LAWYERS MUTUAL INSURANCE CO., Plaintiff,**

v.

**Gilbert HAHN, et al., Defendants.**

**No. CIV.A. 04–0640(JDB).**

United States District Court,
District of Columbia.

Dec. 9, 2004.

**106**

J. Jonathan Schraub, Sands Anderson Marks & Miller, McLean, VA, for Plaintiff.

Mark B. Sandground, Sandground, West & New, P.C., Vienna, VA.

Richard T. Tomar, Karp, Frosh, Lapidus, Wigodsky & Norwind, P.A., Rockville, MD, for Defendant.

### MEMORANDUM OPINION

BATES, District Judge.

This is an action by plaintiff Minnesota Lawyers Mutual Insurance Company ("MLM") seeking a declaration of rights relating to its rescission of a professional liability insurance policy issued to the defendant law firm of Amram & Hahn ("A & H") on September 3, 2003.[1] MLM has moved for summary judgment on the ground that rescission was proper because the undisputed facts and law establish that A & H knowingly failed to notify MLM, prior to issuance of the policy, of a letter constituting notice of a claim or circumstances that could reasonably result in a claim against A & H. For the reasons explained below, MLM's motion will be granted.

### BACKGROUND

The following facts are drawn from MLM's Statement of Material Undisputed Facts ("SMUF"), which has not been controverted in any way by defendants through filing a statement of genuine issues or otherwise. *See* LCvR 56.1. Pursuant to an Application for Coverage and a subsequent Request to Issue, Hahn purchased a professional liability insurance policy for A & H, as the named insured, that was issued by MLM for the policy period July 23, 2003 through July 23, 2004. SMUF ¶ 4. The policy provides coverage for claims, which are defined as "a demand or suit received by the INSURED for money or services. It also means any incident which could reasonably support such a demand or any communication or notice to the INSURED of a potential CLAIM." SMUF ¶ 6. The Application for Coverage submitted by Hahn repeats that same definition of claim. SMUF ¶ 9. In the Application for Coverage, Hahn responded "No" to the following question: "Have any claims been made against the applicant or the applicant's predecessors in business, or any past or present firm members or employees within the past 5 years." SMUF ¶ 10. Hahn also responded "No" in the Application for Coverage to the following question: "Is any firm member aware of any INCIDENT that COULD REASONABLY result in a claim being made against the applicant, its predecessors or any past or present firm members?" SMUF ¶ 11. Hahn certified in the Application for Coverage that "all known claims and all known incidents which might become a claim" have been reported and that the applicant was unaware "of any threatened litigation or existing fact or situation" that could result in a claim.

---

1. This action was filed against several defendants, all of whom have been voluntarily dismissed except for A & H and its principal, Gilbert Hahn ("Hahn").

SMUF ¶ 12. Finally, the Application for Coverage provided that the applicant has a continuing obligation to report "any changes in the information contained" in the materials submitted. SMUF ¶ 13.

A & H and Hahn submitted the Application for Coverage on or about July 14, 2003; thereafter, on or about August 28, 2003, A & H submitted the Request to Issue. *See* SMUF ¶¶ 4, 17. The Request to Issue includes a certification, executed by Hahn, that there has been no significant change in any information since the application, and that Hahn and A & H are unaware of any claims or circumstances that could result in claims that have not been reported to MLM. SMUF ¶¶ 16, 17. Based on the information contained in the Application for Coverage and the Request to Issue, MLM agreed, on September 3, 2003, to bind coverage for A & H, effective July 23, 2003, and hence the policy was issued. SMUF ¶¶ 4, 8, 15, 18.

On or about July 22, 2003—after the Application for Coverage was submitted but before either the Request to Issue was submitted or the Policy was issued—Hahn received a letter ("Claim Letter") from Richard Tomar, Esq., representing certain individuals who claimed to be beneficiaries of trusts for which Hahn served as trustee and attorney. SMUF ¶ 19; Compl. Ex. D. In that letter, Tomar expressly stated that "I have been authorized to institute legal proceedings for claims, including, but not limited to, breach of fiduciary duty, legal malpractice, mismanagement of investments; conversion, misappropriation, dissipation of assets, conflict of interest, accounting, and removal as trustee," and "I am writing to you in an attempt to settle this matter in an amicable fashion." Compl. Ex. D. Hahn did not provide notice to MLM of the Claim Letter or its contents prior to Hahn's execution of the Request to Issue on or about August 28, 2003, or prior to the date MLM bound coverage for Hahn and A & H on September 3, 2003. SMUF ¶¶ 21–22. Not until September 4, 2003, after coverage was bound by MLM, did A & H, through Hahn, provide notice to MLM of the Claim Letter. The existence of the Claim Letter and the facts alleged therein were material to the underwriting decision by MLM to provide insurance for A & H, and MLM would not have undertaken the risk referred to in the Claim Letter had A & H disclosed it during the application process. SMUF ¶ 30; Pl.'s Mot. Summ. J., Ex. 1 (Aff. of Anne Hill) ¶¶ 11–12. MLM therefore determined to rescind the Policy and on April 21, 2004, filed this action for a declaration of its rights.

Although not responding to or otherwise contesting these facts, defendants proffer certain additional facts in response to MLM's motion for summary judgment. Mr. Hahn attests that his conduct relating to the relevant trusts had not been questioned prior to receipt of the Claim Letter; that when he received and read the letter, "any threat of real litigation was disguised" and he called Tomar in an effort to meet with him; that he asked Tomar for "any concrete reasons and facts relative to the letter" and to explain the basis of the claim; that when Tomar "declined and refused to do so, I regarded his letter as nothing more than a complaint from a disgruntle[d] relative"; that he "did not consider it a threat of litigation at that time"; and that after his meeting with Tomar, Hahn "did not believe that it presented an incident that could reasonably result in a claim being made." Opp'n to Pl.'s Motion for Summ. J., Aff. of Gilbert Hahn, Jr.

### *LEGAL STANDARD*

Summary judgment is appropriate when the pleadings and the evidence demonstrate that "there is no genuine issue as to

any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The party seeking summary judgment bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party may successfully support its motion by "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Id. (quoting Fed.R.Civ.P. 56(c)).

In determining whether there exists a genuine issue of material fact sufficient to preclude summary judgment, the court must regard the non-movant's statements as true and accept all evidence and make all inferences in the non-movant's favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A non-moving party, however, must establish more than the "mere existence of a scintilla of evidence" in support of its position. Id. at 252, 106 S.Ct. 2505. By pointing to the absence of evidence proffered by the non-moving party, a moving party may succeed on summary judgment. Celotex, 477 U.S. at 322, 106 S.Ct. 2548. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249–50, 106 S.Ct. 2505 (internal citations omitted). Summary judgment is appropriate if the non-movant fails to offer "evidence on which the jury could reasonably find for the [non-movant]." Id. at 252, 106 S.Ct. 2505.

**2.** In any event, the Court perceives no meaningful difference between District of Columbia

## DISCUSSION

MLM contends, and defendants do not challenge, that Virginia law applies here.[2] Based on the uncontested facts and the clear law, MLM is entitled to summary judgment confirming its rescission of the Policy *ab initio*.

██ Under Virginia law, "an insurer can rescind an insurance contract for misrepresentation of a material fact in applying for insurance." *St. Paul Fire & Marine Ins. Co. v. Jacobson*, 48 F.3d 778, 780 (4th Cir.1995); *Cont'l Cas. Co. v. Graham & Schewe*, 339 F.Supp.2d 723, 726 (E.D.Va. 2004). An insurance company contesting a claim on the basis of an alleged misrepresentation by the insured must show by clear proof that (I) the statement on the application was false; and (ii) that the insurance company's reliance on the false statement was material to the company's decision to undertake the risk and issue the policy. *See Cont'l Cas. Co.*, 339 F.Supp.2d at 726; *Commercial Underwriters Ins. Co. v. Hunt & Calderone, P.C.*, 261 Va. 38, 540 S.E.2d 491, 492 (2001). The falsity of a representation is assessed under an objective standard that asks what a "reasonable person in possession of the facts known to the insured" would believe. *Cont'l Cas. Co.*, 339 F.Supp.2d at 727; *see Commercial Underwriters*, 540 S.E.2d at 493. A misrepresentation is "material" if truthful answers "would have reasonably influenced the company's decision to issue the policy." *Commercial Underwriters*, 540 S.E.2d at 493; *see Mutual of Omaha Ins. Co. v. Echols*, 207 Va. 949, 154 S.E.2d 169, 172 (1967).

██ Materiality includes circumstances where, had it known the truth, the insurer would have issued the policy only

and Virginia law on the relevant issues.

under different terms or for a different premium. *See Buckeye Union Casualty Co. v. Robertson,* 206 Va. 863, 147 S.E.2d 94, 96 (1966) (holding that fact is material if "reasonably careful and intelligent men would have regarded the fact communicated at the time of effecting the insurance as substantially increasing the chances of the loss insured against, so as to bring about a rejection of the risk or charging an increased premium"); *Am. Nat'l Lawyers Ins. Reciprocal v. Dingman,* No. CH98–382, 2000 WL 33258811, at *2 (Va. Cir. Ct.2000) (finding material a misrepresentation as to a potential claim where "company would have underwritten the application differently had this potential claim been disclosed").[3] Rescission is proper even where an applicant initially believes an answer is accurate, but discovers before the policy is issued that it is not, and fails to report the correct facts affecting the insurer's risk. *See* 1 Windt, *supra,* § 2:28 (explaining that rescission is appropriate if insured fails to "exercise due diligence to communicate to the proposing insurer facts materially affecting the risks that arise after the application has been submitted, but before the policy has been delivered"); *see also Stipcich v. Metropolitan Life Ins. Co.,* 277 U.S. 311, 317, 48 S.Ct. 512, 72 L.Ed. 895 (1928) (holding that full disclosure is required if, while insurer deliberates issuance of policy based on application, applicant discovers facts making portions of application untrue); *Hammond v. Pac. Mut. Life Ins. Co.,* 56 Fed.Appx. 118, 127 (4th Cir.2003) (applying Virginia law to conclude that "the suppression of a material fact" is equivalent to a false representation).

Defendants do not take issue with these legal principles. Nor do they contest the facts to which application of this law must be made. A & H (through Hahn) received the Claim Letter on or about July 22, 2003. The letter said specifically that Tomar was authorized to institute legal proceedings for a variety of claims, which he wished to resolve in an amicable fashion. In the Request to Issue A & H submitted through Hahn on August 28, 2003, no mention of that "claim" is made although A & H certified that it was unaware of any claims or facts or circumstances that could result in claims and that there were no significant changes in any information since its application had been submitted. MLM agreed to bind coverage for A & H on September 3, 2003, and therefore issued the Policy. There is no dispute that the existence of the Claim Letter and the facts alleged therein are material to MLM's underwriting decision, and MLM would not have issued the Policy had it known of the potential claims asserted in the Claim Letter, or at a minimum would have excepted those claims from any coverage. Only on September 4, 2003, did A & H (through Hahn) provide its first notice to MLM of the Claim Letter.

On the basis of those facts and clear Virginia law, MLM was warranted in rescinding the Policy. A & H and Hahn rely on only two points to argue that summary judgment is inappropriate. First, they argue that the Claim Letter cannot be used by MLM in its summary judgment motion, apparently because defendants believe there is a distinction between the existence

---

**3.** *See also Inter–Ocean Ins. Co. v. Harkrader,* 193 Va. 96, 67 S.E.2d 894, 897 (1951) (materiality encompasses facts that "would naturally and reasonably influence the judgment of the insurer in making the contract or in establishing the degree or character of the risk or in fixing the rate of premium"); 1 Allan D. Windt, *Insurance Claims & Disputes* § 2:26, at 148–49 (4th ed. & Supp.2004) ("[T]he insurance company need prove only that the misrepresentation was such that knowledge by the company of the facts misrepresented might have led to a refusal to issue the same policy for substantially the same premium.").

of the Claim Letter (which they suggest has been authenticated) and its contents (which they say has not). Second, they contend that there is a genuine issue of material fact precluding summary judgment regarding Hahn's subjective "reasonableness" in concluding that the Claim Letter from Mr. Tomar was not really notice of a potential claim, but instead only a complaint from a disgruntled relative. Neither argument is, the Court concludes, well taken.

■ Defendants' first objection makes little sense. They admitted in response to plaintiffs' request for admissions that they "received" the Claim Letter (which plaintiffs had attached to the request for admission) and that they "were aware of the contents" of the Claim Letter during the relevant period. Pl.'s Supplemental Mem. Supp. Summ. J., Ex. B at 1–2. It is unclear what more in the way of authentication defendants could plausibly demand than their own admission that they received and reviewed the document at issue and it is the document that defendants are relying on in their papers. The defendants' possession and knowledge of the contents of the Claim Letter are precisely what is at issue. Plainly, then, defendants' admissions are more than sufficient to permit its consideration at summary judgment. *See* Fed.R.Evid. 901; *Goldman v. Summerfield*, 214 F.2d 858, 859 (D.C.Cir. 1954).

■ To the extent defendants are arguing that there is no evidence that the "contents" of the Claim Letter from Mr. Tomar are true, that fact is unimportant. The Claim Letter is significant because it represents notice to A & H and Hahn of a potential claim, thus providing reason for them to foresee that a claim might be made against A & H. Defendants need not admit to the merit of that potential claim here, and the failure of defendants to give MLM the required notice cannot be ex-cused by a well-founded belief in non-liability. *See City of Utica, N.Y. v. Genesee Mgmt., Inc.*, 934 F.Supp. 510, 521 (N.D.N.Y.1996). Certainly, the Claim Letter can be used in these summary judgment proceedings to establish that A & H had a reasonable basis to foresee that a claim might be made, even if Hahn believed that potential claim to be lacking in merit. *See Carosella & Ferry, P.C. v. TIG Ins. Co.*, 189 F.Supp.2d 249, 253 (E.D.Pa. 2001); *Culver v. Cont'l Ins. Co.*, 1 F.Supp.2d 545, 546–47 (D.Md.1998). Because the purpose of a notice provision in an insurance contract (or application) is to permit the insurer to make its own independent assessment of risk and issuance— of which opportunity MLM was deprived by defendants' failure to notify MLM of the Claim Letter—any focus the defendants place on the truth of the contents of the Claim Letter is misplaced.

■ Defendants' emphasis on the reasonableness of Hahn's determination that the Claim Letter did not really represent a claim is similarly unavailing. Knowledge of a claim is governed in the insurance world by an objective test. *See Cont'l Cas. Co.*, 339 F.Supp.2d at 727 ("Virginia courts have assessed an insured's prior knowledge under an objective standard, asking whether a reasonable person in possession of the facts known to the insured, would have had a reasonable basis to know that a claim might be made."); *Mt. Airy Ins. Co. v. Thomas*, 954 F.Supp. 1073, 1080 (W.D.Pa.1997) (dispute over whether attorney believed client would make claim is not relevant). This Court is able to conclude, based on the record, that a reasonable person, upon receipt of the Claim Letter stating that an attorney has "been authorized to institute legal proceedings for claims," would conclude that the Claim Letter was notice of a claim, as defined in the Application for Coverage and the Re-

quest to Issue to include incidents that might become claims. Defendants represented and certified that they were not aware of any incident, and had no knowledge of any fact or situation, that could reasonably result in a claim against them, notwithstanding receipt of the Claim Letter. The Court concludes that was a material misrepresentation warranting rescission of the Policy. *See St. Paul Fire & Marine,* 48 F.3d at 780; *Cont'l Cas. Co.,* 339 F.Supp.2d at 726; *Am. Nat'l Lawyers Ins. Reciprocal,* 2000 WL 33258811, at *2.

### CONCLUSION

For the reasons stated above, the Court concludes that MLM properly rescinded the Policy with A & H because of a material misrepresentation by A & H and Hahn and their failure timely to notify MLM of a potential claim of which Hahn and A & H were aware prior to issuance of the Policy. Summary judgment will therefore be granted in favor of MLM. An accompanying order will be issued.

### ORDER

Upon consideration of plaintiff Minnesota Lawyers Mutual Insurance Company's motion for summary judgment, the various memoranda of the parties, and the entire record herein, and for the reasons explained in the accompanying Memorandum Opinion issue on this date, it is this *9th* day of December, 2004, hereby

ORDERED that plaintiff's motion for summary judgment is GRANTED, and judgment is entered on behalf of plaintiff rescinding the insurance policy with defendants *ab initio.*