Syllabus.

## Wytheville.

## THOMAS A. WILLIAMS, ADMINISTRATOR OF MARGARET R. KENNEY, DECEASED, v. METROPOLITAN LIFE INSURANCE COMPANY.

### June 12, 1924.

1. LIFE INSURANCE—*Application—Material Alteration in Policy Issued—Policy Issued without Application.*—Where plaintiff's intestate made application for a policy which the company refused to issue but issued another policy instead, making a material alteration in the insured's application, and the application for a second policy was not signed by plaintiff's intestate and there was no evidence that she ever knew of the existence of the application, it might well be contended that the policy was issued without application.

2. LIFE INSURANCE—*Application—Representations of Insured as to Cancer—Case at Bar.*—In the instant case an application for life insurance contained a statement, "I have never had any of the following complaints, or diseases," enumerating cancer and a large number of other diseases, "except _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _." Nothing was placed in the blank by the examining physician, and a witness who was present at the examination testified that insured was not asked as to cancer and that no mention was made of cancer by either party. This witness also testified that insured told the examiner that she had been in the hospital at a certain time and under the care of certain physicians at other times.

   *Held:* That insured informed the examiner in reasonable detail of her previous sicknesses, and that the insurance company could not defend a suit on the policy on the ground that insured had cancer prior to making the application and that she died of cancer.

3. LIFE INSURANCE—*Application—Failure to Answer.*—A life insurance company cannot complain of a decedent's failure to answer questions which its examiner did not ask her.

4. LIFE INSURANCE—*Application—Statements of Insured—Construction where Written by Examining Physician.*—Where the statements of insured in an application for life insurance are written by the examining physician of the company, where there is room for doubt, they should be construed most strongly against the company.

5. INSURANCE—*Application—Imperfect Answer or Failure to Answer.*—
Where, upon the face of the application, a question appears to be not answered at all, or to be imperfectly answered, and the insurers issue a policy without further inquiry, they waive the want or imperfection in the answer, and render the omission to answer more fully immaterial.

6. INSURANCE—*Construction—Favorable to the Insured.*—Where the language of a policy of insurance is susceptible of two constructions, it is to be interpreted in the sense which is most favorable to the insured.

7. DEMURRER TO THE EVIDENCE—*General Rule.*—Under the familiar rule which obtains when a demurrer to the evidence is relied on, the defendant admits as true all of the plaintiff's evidence and all just inferences to be drawn therefrom, and waives all of his evidence in conflict therewith. And where a jury might have found for the demurree, the court must so find.

8. LIFE INSURANCE—*Application—Disclosure by Insured—Cancer—Representations—Case at Bar.*—Where the insurer did not ask the insured whether she ever had cancer, and insured did not state that she had never had cancer, and she was not asked a comprehensive question which included in its scope of inquiry the question touching cancer, the insured was not bound to tell the medical examiner what she knew about cancer. In the instant case there were no representations or statements of insured in the evidence which it could be said were material to the risk when assumed and were untrue within section 4220 of the Code of 1919.

9. INSURANCE—*Construction of Policies—Forfeiture.*—In construing policies of insurance, courts do not look for grounds of forfeiture, and will construe the language of the policies liberally in favor of the insured.

Error to a judgment of the Hustings' Court, Part 2, of the city of Richmond, in a proceeding by motion for a judgment for money. Judgment for defendant. Plaintiff assigns error.

*Reversed.*

The opinion states the case.

*Bethel & Williams,* for the plaintiff in error.

*Wellford & Taylor,* for the defendant in error.

WEST, J., delivered the opinion of the court.

This action was instituted by Thos. A. Williams, administrator, to collect from the Metropolitan Life Insurance Company three life insurance policies covering the life of Margaret R. Kenney, deceased.

On the first trial, the jury failed to agree. On the second, a verdict was returned for the plaintiff for $1,004.00, subject to the ruling of the court upon the defendant's demurrer to the evidence. To a judgment on the demurrer in favor of the defendant, this writ of error was awarded.

On the 21st day of June, 1920, Margaret R. Kenney filed applications with the agent of the Metropolitan Life Insurance Company for two policies of industrial insurance; the premium on one of which was sixty cents, and on the other forty cents, per week. The sixty cents per week policy was duly issued by the company and accepted by her. The company declined to issue the forty cents per week policy, but issued and offered to her a twenty-five cents per week policy and a fifteen cents per week policy, both of which she accepted. She paid the premiums on these policies until her death, January 20, 1921.

The amount of insurance under the sixty cents policy, No. 61,860,245, was $468.00; under the twenty-five cents policy, No. 61,890,318, was $335.00; and under the fifteen cents policy was $210.00.

Upon presentation of proper proofs of death, the company denied liability on the ground that the insured had cancer prior to making application for the insurance, and stated therein that she had never had cancer, and that she died of cancer.

The record discloses, without contradiction, that plaintiff's intestate made one application for a forty

cents per week policy, which the company refused to issue. It appears from this application, marked "Exhibit Number 2," that there was a change made therein by the defendant in the premium from a forty cents per week premium to a twenty-five cents per week premium. It also appears from "Exhibit 3" that the application for the fifteen cents per week policy was not signed by the plaintiff's intestate, and that no examination was noted thereon by the medical examiner. There is no evidence that plaintiff's intestate ever knew of the existence of this application.

Besides, the change made by the company in the application marked "Exhibit No. 2," from a forty cents per week premium was a material alteration of the insured's application.

[1] Construing the policies strictly against the company, it may well be contended that the defense of the company is invalid on the ground that these two policies were issued without applications.

[2] Upon the application for policy No. 61,860,245, statement "2," in section "C," reads as follows:

"I have never had any of the following complaints, or diseases: Apoplexy, asthma, bronchitis, cancer, or other tumor, consumption, disease of brain, disease of heart, disease of kidneys, disease of liver, disease of lungs, disease of urinary organs, dropsy, fistula, fits or convulsions, general debility, habitual cough, hemorrhage, insanity, jaundice, paralysis, pleurisy, pneumonia, rheumatism, scrofula, spinal disease, spitting or raising blood, ulcer or open sores, varicose veins, except" * * * *.

Mrs. Helen Martin, daughter of the deceased, called as a witness for the plaintiff, testified that she was present when Dr. J. R. Williams, the company's medical examiner, was examining her mother, and heard every

word that passed between them, and that the doctor did not ask her mother a question as to cancer, and that no mention was made of cancer by either party. Mrs. Martin further testified that her mother told the doctor she had been to the hospital in October, 1919, under the care of Dr. H. B. Sanford and Dr. Charles R. Robins, and that she had had "flu" in January and had been under the care of Dr. Rollins at that time, and also under his care in the hospital in May, 1920. This was certainly sufficient to put the company on inquiry as to the applicant's illnesses and diseases.

In section "D" of the application, at "11," the company's examiner, in answer to the question, "Is there any evidence or history of disease of the liver, stomach, intestines, or *genito-urinary* tract," wrote the words "uterus suspended 1918." He also, in answer to "4" in section "C," wrote the words "uterus suspended." Yet with this information before him he did not mention this fact as an exception in "2," section "C," *supra.*

[3, 4] It seems quite apparent that plaintiff's intestate informed the company's examiner in reasonable detail of her previous sicknesses and disabilities, and that he did not ask her any specific questions about, or bring her attention to, cancer. The company cannot complain of the decedent's failure to answer questions which its examiner did not ask her. The statements of the decedent, in sections "C" and "D" of the application, being written by the examining physician of the company, should, where there is room for doubt, be construed most strongly against the company.

[5] Upon the question of imperfect answers or a failure to answer questions in an application for insurance, Vance on Insurance, at page 258, states the law thus: "Where, upon the face of the application, a question ap-

pears to be not answered at all, or to be imperfectly an-swered, and the insurers issue a policy without further inquiry, they waive the want or imperfection in the an-swer, and render the omission to answer more fully im-material."

In *Hall* v. *Insurance Co.*, 6 Gray (Mass.) 191, the court held that the company by consenting to issue the policy upon the application as it was, waived all claim to further answers, and that the company was liable un-der the policy contract.

In *Lorillard Fire Ins. Co.* v. *McCulloch*, 21 Ohio St. 179, 8 Am. Rep. 52, where the company sought to avoid the policy for an alleged breach of warranty, consisting of the fact that the answers given to the questions con-tained in the written application were not full answers, and also in the fact that they were false, the court said: "It seems to us sufficient to say, that the receipt of the application and the issuance of the policy thereupon, was a waiver of the questions in so far as they remained unanswered and that the policy cannot therefore be avoided by the company on the ground that the an-swers are not full. The objection should have been made at the time of the receipt of the premium and the issuance of the policy, or not at all. Had further an-swers been insisted upon at that time, the applicant would doubtless have given them. To receive the pre-mium and issue the policy upon the answers as given, and afterwards avoid the policy on the ground that the answers were not full, would be to practice a virtual fraud upon the insured."

In *Carson* v. *Insurance Co.*, 43 N. J. Law, 306, 9 Am. Rep. 584, the court held that a policy issued upon a written application for insurance in which any of the questions are left unanswered is a waiver of the right to the information called for by the inquiries unanswered,

and that if insurer issues a policy upon an incomplete application for insurance, he cannot afterwards avoid the policy on the ground that the answers were not full. Citing Wood on Insurance, sections 151, 496; May on Insurance, 166; *Liberty Hall Association* v. *Insurance Co.*, 7 Gray (Mass.) 261; *Hall* v. *Insurance Co.*, 6 Gray (Mass.) 185; *Dohn* v. *Farmers Ins. Co.*, 5 Lansing (N. Y.) 275.

[6] Where the language of a policy of insurance is susceptible of two constructions, it is to be interpreted in the sense which is most favorable to the insured. *Thompson* v. *Ins. Co.*, 136 U. S. 287, 10 Sup. Ct. 1019, 34 L. Ed. 408; *Va. F. & M. Ins. Co.* v. *Vaughan*, 88 Va. 836, 14 S. E. 754.

[7] Under the familiar rule which obtains when a demurrer to the evidence is relied on, the defendant admits as true all of the plaintiff's evidence and all just inferences to be drawn therefrom, and waives all of his evidence in conflict therewith. Viewing the instant case in the light of this rule and the law as applied to the evidence, we are of the opinion that the company has waived its right to complain of the unanswered and imperfectly answered questions contained in decedent's application, and cannot now avoid its policy contract. Certain it is that the jury would have been warranted in so finding. And since the jury might have found for the demurree, the court erred in not so finding. *Bank* v. *Taylor*, 104 Va. 164, 51 S. E. 159.

[8] The defendant in error, as demurrant to the evidence, admits that the insurer did not ask the plaintiff's intestate whether she ever had cancer, and that she did not state that she had never had cancer, but contends that she, in good faith, should have told the medical examiner what she knew about cancer, whether the information was called for by any of the questions asked her or not. For this position he relies on *Talley* v. *Met-*

*ropolitan Life Ins. Co.,* 111 Va. 778, 69 S. E. 936. That case is distinguishable from the case at bar. In the *Talley Case* the applicant for life insurance answered "yes" to the question "any disease of chest or lungs?" Subsequently he was asked the comprehensive question, "give full particulars of every illness you have had since childhood, and name every physician who has ever attended you or prescribed for you." In answer to this question the applicant stated that in November, 1906, he had a mild attack of urethritis, without complications, which lasted seven days, when he was attended by Dr. Bosher; that in December, 1905, he had a mild attack of bronchitis, without complications, lasting three days, in which he was attended by no physician. The uncontroverted evidence in that case showed that before making application for the insurance, in June, 1907, insured consulted Dr. Tompkins; that Dr. Tompkins and Dr. Hopkins examined his sputum and found therein large quantities of tuberculosis germs, and communicated the facts to the applicant.

In disposing of the case, under these facts, the court held that the answer "yes" was sufficient to put the physician on inquiry, that inquiry was subsequently prosecuted in the comprehensive question, *supra*, and that this question comprehended within its scope of inquiry the former question, and called for particulars touching the categorical answer thereto. The court adds that if the last question had been truthfully answered the insurer would have been possessed of the very material facts which were fully known to and suppressed by the applicant, and would have resulted in his rejection as an insurable risk.

In the instant case, it is admitted that the applicant was not asked if she ever had cancer; and she was not asked a comprehensive question which included in its

scope of inquiry the question touching cancer. The subsequent questions 9 and 10 referred to serious illness, and other complaints, *"except those mentioned"* (above) *"herein."*

The Code of Virginia, section 4220, provides: "All statements, declarations and descriptions in any application for a policy of insurance shall be deemed representations and not warranties, and no statement in such application, or in any affidavit made before or after loss under the policy, shall bar a recovery upon a policy of insurance, or be construed as a warranty, anything in the policy to the contrary notwithstanding, unless it be clearly proved that such answer or statement was material to the risk when assumed and was untrue."

The demurrant having waived all its evidence in conflict with that of the demurree, and it being admitted that the applicant for insurance was not asked whether she ever had cancer, and did not state that she never had cancer, there are no representations, or statements, of the plaintiff's intestate in the evidence which it can be said were material to the risk when assumed, and were untrue.

All we have said in our consideration of the plaintiff's right to recover upon the sixty cents per week policy applies with equal force to his right to recover upon the other two policies.

[9] In construing policies of insurance, courts do not look for grounds of forfeiture, and will construe the language of the policies liberally in favor of the insured.

The court erred in sustaining defendant's demurrer to the evidence. The judgment will be reversed and judgment entered here upon the verdict of the jury.

*Reversed.*