# Richmond

## METROPOLITAN LIFE INSURANCE COMPANY OF NEW YORK v. GEORGIE HART.

March 22, 1934.

Present, All the Justices.

The opinion states the case.

*Gardner L. Boothe,* for the plaintiff in error.

*Clyde B. Lanham* and *W. D. Butts,* for the defendant in error.

Holt, J., delivered the opinion of the court.

The plaintiff (defendant in error) is the mother of William Hart, deceased, and is the beneficiary under a policy of insurance written by the defendant on his life. In the trial court she has recovered a verdict and judgment.

On June 12, 1931, William Hart, who lived in Alexandria, Virginia, made application to the defendant company for a policy of insurance on his life in the sum of $1,000. On June 15, he took the ordinary medical examination. From that examination he appeared to be an acceptable risk, and on July 22 his policy issued. Hart died on November 2, 1931. Payment was demanded and refused. Notice of motion for judgment was filed on March 17, 1932. It came on to be heard in due course. The defendant contended that there was a fraud in the procurement of the contract. On the second day of June, 1932, there was a verdict for the plaintiff which the court was asked to set aside as being contrary to the law and evidence. That motion the court took under advisement and on September 28, 1932, confirmed the verdict of the jury and entered judgment for the plaintiff in the full amount of her claim.

Hart, at the date of his application, suffered from tuberculosis and died from that cause in something less than four months thereafter.

The applicant was examined by Dr. Walter E. Beatty of Alexandria, one of the medical examiners of defendant company. This examination consisted of certain questions and answers reduced to writing and signed by the applicant. There was a physical examination also. This appears:

"Q. What is your weight?

"A. 146 pounds.

"Q. Date when last weighed?

"A. May, 1931.

"Q. Change in weight in last two years?

"A. Same.

"Q. Present condition of health?

"A. Good.

"Q. When last sick?

"A. June, 1928.

"Q. Nature of sickness?

"A. Flu.

"Q. How long sick?

"A. One week.

"Q. Have you changed your residence or left your work for more than one month on account of your health? If yes, give date, duration and name of ailment.

"A. No.

"Q. Any physical defect or infirmity? If yes, give particulars.

"A. No.

"Q. Have you had any surgical operation, serious illness or accident? If yes, give date, duration and name of ailment.

"A. Open infected leg, 1917.

"Q. Have you ever had any of the following diseases? (Among the list enumerated are consumption, disease of lungs.)

"A. No.

"Q. Have you been attended by a physician during the past five years? If yes, give name of complaint, dates, how long sick, and names of physicians.

"A. Dr. Durant, June, 1928, flu, one week.

"Q. Have you had any treatment within the last five years at any dispensary, hospital or sanatorium? If yes, give date, duration, name of ailment and name of institution.

"A. No.

"Q. How much time have you lost from work during the last five years?

"A. One·month."

On June 26, 1930, Dr. Llewellyn Powell at the Alexandria Tuberculosis Clinic examined Hart and found that he was suffering from positive pulmonary tuberculosis. As the result of that examination he recommended that the patient stop all work and go to a sanatorium for treatment. In accordance with that advice he went to the Piedmont Sanatorium at Burkeville, Virginia, and was admitted as a patient on July 15, 1930. He was then examined by Dr. John A. Proffitt who also found that he was suffering from pulmonary tuberculosis. He remained at Burkeville until February 10, 1931, when he was discharged. His condition then was classified as quiescent.

"The term 'quiescent,' according to the classification of the National Tuberculosis Association, means that there should be an absence of symptoms for two months, the pulmonary lesion to be stationary and retrogressive; the sputum may or may not be positive, no *tuberculi bacilli*."

After his discharge he returned to his home in Alexandria and was twice examined by a specialist, Dr. A. H. A. Latane, first on March 26, 1931, and next on September 24, 1931.

"In the March examination he showed evidence of an inactive tuberculosis; that is, the lung condition showed evidence of the presence of tuberculosis; no active signs at that time. In the September examination there was evidence of active tuberculosis in the right upper lobe."

While at the sanatorium he gained about twelve pounds in weight.

▆ His statements are shot through with fraud. There had been a material change in weight. He was not last sick in 1928; his last illness had been for more than a week; he had left his work for more than a month on account of illness; he had consulted physicians other than Dr. Durant and he had within the last five years been to a sanatorium for treatment. He had consumption and he knew it. All of these statements were material to the risk assumed and bar a recovery (Code, section 4220), unless the insurance company be estopped to rely upon them.

Plaintiff claims that the examining physician was the company's agent, and that it is bound by facts within his knowledge or as to which he was put upon inquiry. With this claim we find no fault. *Harrison* v. *Provident Relief Association of Washington,* 141 Va. 659, 126 S. E. 696, 40 A. L. R. 616; *Royal Indemnity Co.* v. *Hook,* 155 Va. 956, 157 S. E. 414; *Union Mut. L. Insurance Co.* v. *Wilkinson,* 13 Wall. 222, 235, 20 L. Ed. 617.

It is not contended that the examining physician had actual knowledge of the situation, but it is said that he had knowledge of facts which put him upon inquiry and that information which could thus have been acquired is imputed to his principal.

To sustain this claim the testimony of Joe Holmes is relied upon. In direct examination he said that he visited the Hart home "a lot," was there in June, 1931, and was present when Hart was being questioned by Dr. Beatty. whom he identified. He was asked, "What questions did the doctor ask William Hart, do you know?" and answered: "When he came there I was there at the time he examined him. The doctor took out a *telescope* and pushed it in his side and examined him and asked him if he had ever been sick. He said he had been to the sanatorium for treatment. I went out at the time he was talking to him." He was further asked if he knew of any other questions concerning other things and answered: "I do not."

Upon cross-examination he was unable to remember if this was in the summer or in the winter. He remembered no other answer made by Hart beyond that he had been to a sanatorium. He was asked "Did he tell the doctor when he had been to the sanatorium?" and answered: "No, sir, he did not tell him when."

Dr. Beatty was asked, "At the time this application was made on June 15, 1931, Doctor, were you aware that William Hart had been confined in a sanatorium in the previous year?" and answered: "No, sir."

He said that the answers written were the answers

given, that he used his stethoscope and made a routine examination. He had no recollection of Holmes being present and none of ever having seen him, although he was unwilling to say positively that he was not there. He also said that Holmes must have been mistaken in stating that he first used the stethoscope and then questioned the applicant, for it was his custom to question the applicant first and then to make the physical examination.

In the light of this evidence certain instructions given for the plaintiff are misleading. This is instruction No. 1:

"The court instructs the jury that an insurance company seeking to avoid its liability on a policy of life insurance on the ground of fraud or misrepresentation has the burden of proving such misrepresentation or fraud, and the same must be clearly proven by convincing evidence; and that if the evidence produced by the insurance company is doubtful in your mind, or is a mere circumstance of suspicion, fraud or misrepresentation is not proven, and in the absence of clear and convincing proof you must find for the plaintiff."

The defense relied upon is not "a mere circumstantial suspicion" but is a bald misstatement of material facts known by the insured to have been untrue when made. Fraud really is not denied, but estoppel is relied upon.

The court also, at the instance of the plaintiff, told the jury:

"The court instructs the jury that if you find that the agent of the Metropolitan Life Insurance Company, acting within the general scope of his authority, acquired knowledge of the fact that William Hart had been to a sanatorium, or any other facts upon which the insurance company now seeks to avoid its liability on the policy, you must find for the plaintiff even though it be clearly and satisfactorily proved that the statements in the application blank made by William Hart were material to the risk when assumed and were untrue."

Holmes said that Hart told the agent he had been in a

sanatorium, and this witness tells us that he heard Hart tell him nothing more. There is no evidence in the record which by remotest implication tends to show that the agent or the insurance company had knowledge of "other facts." Since the jury had no "other facts" it had no right to base a verdict upon them. In short, the jury was told that it might speculate or guess.

If a railroad were charged with negligence in failing to sound a crossing signal and if that were the issue fought out at the trial, it would be plainly improper to tell the jury that the railroad was liable if it was negligent in failing to give such signal or was negligent in any other particular. The instruction must fit the case. *Southern Ry. Co.* v. *Forgey,* 105 Va. 599, 54 S. E. 477; *Clinchfield Coal Co.* v. *Wheeler,* 108 Va. 448, 62 S. E. 269; *Helm* v. *Manufacturers' Light, etc., Co.,* 86 W. Va. 628, 104 S. E. 59, 25 A. L. R. 240.

■ With these errors before us what character of judgment should be entered here? It must be upon the merits where the facts suffice.

We are governed by Code, section 6365, which reads: "The appellate court shall affirm the judgment, decree, or order if there be no error therein, and reverse the same in whole or in part if erroneous, and enter such judgment, decree, or order as to the court shall seem right and proper and shall render final judgment upon the merits whenever, in the opinion of the court, the facts before it are such as to enable the court to attain the ends of justice. A civil case shall not be remanded for a trial *de novo* except where the ends of justice require it, but the appellate court shall, in the order remanding the case, if it be remanded, designate upon what questions or points a new trial is to be had."

We do not consider this evidence as on demurrer. *Taylor* v. *Mason,* 158 Va. 870, 164 S. E. 652. On the other hand, we should not undertake to pass upon matters which clearly and properly fall within the province of the jury. Where it is plain that the ends of justice can

be attained, however, we should act. In such a case the court should render final judgment upon the merits.

■ Plaintiff does not claim that Dr. Beatty was party to a fraud, but that he was negligent in failing to make further inquiry as to the health of the applicant.

Evidence to show that he was put upon inquiry is thin. Holmes could not remember whether the examination was in winter or summer and could recall nothing save that Hart said that he had been in a sanatorium, at a time not named.

If all that the applicant said about a sanatorium be accepted at its face value these facts must be taken as established. He told the examining physician that he had been in a sanatorium but that he had not been treated there within the last five years. These two statements of course do not conflict, and there was no reason for the examining physician to make inquiries antedating the five year period.

If it should be conceded that the examiner was put on notice we would have a situation quite like that which appears in *Talley* v. *Metropolitan Life Ins. Co.,* 111 Va. 778, 69 S. E. 936. The applicant there was asked if he had had any disease of "chest or lungs" and answered "Yes." He was then further questioned and told to give full particulars of every illness. By way of answer he said that in November, 1906, he had had a mild attack of urethritis which lasted for seven days, and that he had had a mild attack of bronchitis which lasted for three days, when as a matter of fact he had been examined by two physicians who found tubercular germs in his sputum. The court held that these statements of the applicant were sufficient to satisfy the doctor and to allay any suspicion which might have been occasioned by the first answer. See, also, *Williams* v. *Metropolitan Life Ins. Co.,* 139 Va. 341, 123 S. E. 509.

Hart not only said that he had been in no sanatorium within the past five years, but that within that time he had lost but one month from work; that he had not been

sick since June, 1928, when he had had "flu" for a week and was treated by Dr. Durant. He further said that there had been no recent change in his weight and that he had never had consumption, all of which was false and material.

In eliciting these answers Dr. Beatty did all that the physician did in *Talley's Case* and more.

From what has been said it follows that the judgment must be reversed and the case dismissed, and this is true whether we base our judgment upon the provisions of Code, section 6365, or of Code, section 6363. The judgment complained of was plainly wrong.

*Reversed.*