**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 05-2159

STANDARD LIFE & ACCIDENT INSURANCE COMPANY,

Plaintiff - Appellant,

versus

DEWBERRY & DAVIS, LLC; DEWBERRY & DAVIS,
INCORPORATED,

Defendants - Appellees.

Appeal from the United States District Court for the Eastern
District of Virginia, at Alexandria.  Gerald Bruce Lee, District
Judge.  (CA-05-956)

Argued:  October 25, 2006          Decided:  December 19, 2006

Before KING, GREGORY, and SHEDD, Circuit Judges.

Affirmed by unpublished opinion. Judge Gregory wrote the opinion,
in which Judge King and Judge Shedd joined.

**ARGUED:** Craig Lawrence Mytelka, WILLIAMS MULLEN, Virginia Beach,
Virginia, for Appellant.   Stephen Michael Sayers, HUNTON &
WILLIAMS, L.L.P., McLean, Virginia, for Appellees. **ON BRIEF:** James
A. Gorry, III, WILLIAMS MULLEN HOFHEIMER NUSBAUM, P.C., Norfolk,
Virginia; William R. Poynter, WILLIAMS MULLEN, Virginia Beach,
Virginia, for Appellant.

Unpublished opinions are not binding precedent in this circuit.

GREGORY, Circuit Judge:

Standard Life & Accident Insurance Co. appeals the dismissal of its complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Because we agree with the district court that the attachments to Standard's complaint belie any legal claims contained therein, we affirm the ruling of the district court and dismiss Standard's action.

I.

Dewberry & Davis, LLC, is an engineering, architectural, and surveying business with its headquarters in Fairfax, Virginia.[1] Dewberry provides health insurance to its employees through a self-insured plan, using CoreSource, Inc., as its third party administrator. In September 2004 Dewberry applied for reinsurance from Standard, an Oklahoma corporation with its principal place of business in Galveston, Texas. Standard was to provide reinsurance coverage for members of Dewberry's health plan from October 1, 2004, through October 1, 2005.

As part of the reinsurance application process, Standard required Dewberry to fill out an Employer Disclosure Statement. The disclosure statement inquired into the medical condition of

---

[1]Because this case was dismissed for failure to state a claim on which relief may be granted, the facts are taken as true from Standard's complaint and the exhibits attached to it. See Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2006).

2

Dewberry employees whom Standard would cover and was signed by Dewberry on September 22, 2004. While Dewberry and Standard were still negotiating the terms of coverage for Dewberry's employees, Dewberry acquired Philip Swager Associates. Dewberry notified Standard of the acquisition on December 15, 2004; Dewberry wished to add excess loss reinsurance coverage for its new employees, to be effective January 1, 2005.

At Standard's behest, Dewberry signed an Employer Disclosure Statement regarding its new employees on January 12, 2005. CoreSource signed the disclosure statement a few days later, on January 21, 2005. The statement is four pages long and contains nine questions. Its directions indicate that the reinsurance applicant should use the reverse side of the form or attach additional paper if it needs more space to complete the form. If a question is inapplicable, the applicant should so indicate with "N/A." On its signature page, the form stated:

> The Reinsurer is entitled to rely upon this information when setting terms and conditions of stop loss coverage as of the effective date; and to the extent such information is inaccurate or incomplete, the Reinsurer reserves the right to rescind coverage as of the effective date, or to adjust the terms and conditions to levels that the Reinsurer would have established if the information provided had been correct; including the right to exclude coverage for any person who should have been identified as a result of this review but was not disclosed herein.

Dewberry left all but three questions of this second Employer Disclosure Statement blank. It listed one name after question

3

three, one name after question six, and answered question eight with: "See above, those are only two people to have been in case management." Below the signatures on the final page of the form, CoreSource added the following:

> Disclaimer: CoreSource has signed the Disclosure Statement as required by Standard Life & Accident. Please note that we make no representation on behalf of the new division added effective 1/1/05. CoreSource has no knowledge of large claims prior to this date. Attached is additional information for the existing group only.

Attached to the form were approximately twenty pages of computer-generated medical history reports, current to the date of CoreSource's signature, for Dewberry employees and their covered dependents. The woman around whom this case centers ("the Dependent"), was the dependent of one of the new Dewberry employees. She is mentioned in two locations in those attached pages. Her name first appears, along with minimal additional information, on a document entitled "Case Management Log - Active." Her diagnosis is listed as "Complicated Pregnancy" and her prognosis as "Good." The second time her name appears, extensive information about her medical condition and treatment history is listed in a document entitled "HCM Reinsurance Report." The Dependent's entry includes the January 10, 2005, note: "WILL OPEN [the Dependent's case] FOR ASSESSMENT FOR CASE MANAGEMENT." The next day's entry indicates that the Dependent was or would be admitted to a high-risk obstetrics unit. At that time, four of the

4

Dependent's six unborn children were transverse, and one was breech. On January 14, 2005, according to the attachment, a physician told the Dependent one of the babies would probably live only two to three weeks. The doctor noted "INCREASED SUSPICION OF PROBLEMS."

The Dependent was admitted to the hospital on January 6, 2005, for early onset of delivery of her sextuplets and for other unspecified complications. She was released January 21, 2005, the day CoreSource signed the disclosure statement pertaining to the new Dewberry employees. She delivered five live children on February 4, 2005, each of whom required extended hospitalization over the next few months.

On February 3, 2005, Dewberry signed Standard's Treaty of Excess Loss Reinsurance in Dewberry's Virginia office. The Treaty was to cover (retroactively, to some extent) the one-year period beginning October 1, 2004. On June 6, 2005, Benmark, Inc., Standard's managing general underwriter, received a letter from CoreSource notifying Standard that the Dependent had "reached the potential for a large claim and is currently being monitored for large case management . . . ." Later in June, Benmark received requests for reinsurance reimbursement from Dewberry relating to the Dependent's five surviving children. Standard brought an action for declaratory judgment on June 30, 2005, in the Eastern District

of Virginia, seeking to avoid payment for the Dependent and her children.

Standard's complaint contains five counts.[2] The first, labeled "AVOIDANCE OF COVERAGE," contends simply that Dewberry was not entitled to excess loss reinsurance coverage for the Dependent or "any dependents." This count relies on the language of the Employer Disclosure Statement relating to Standard's freedom to change or rescind coverage if Dewberry inaccurately reported relevant information. The second count ("DECLARATION OF NON-LIABILITY") seems a reiteration of the first: as a result of Dewberry's misrepresentations, Standard is not obligated under the Treaty to pay for the Dependent or her children. Count Three relies on fraudulent concealment, and Count Four on breach of a duty of utmost good faith. Finally, Count Five states that, "[i]n the alternative, coverage under the Treaty of the medical expenses of [the Dependent] and her dependents should be rescinded for all of the foregoing reasons."

In response to a motion by Dewberry under Rule 12(b)(6), the district court dismissed all of Standard's claims. The court found every claim hinged upon the non-disclosure of the Dependent's medical information. Because the court found that "Dewberry did disclose both [the Dependent] and her condition during the

---

[2]By the parties' agreement, Standard's claims should be adjudged under Virginia law. See Smith v. McDonald, 895 F.2d 147, 148 (4th Cir. 1990).

application process," it concluded that Standard could not state a claim for relief. We review the district court's dismissal de novo. Partington v. American Intern. Specialty Lines Ins. Co., 443 F.3d 334, 338 (4th Cir. 2006).

## II.

We agree with the district court. Standard's success is contingent upon Dewberry's failure to disclose the Dependent and her medical situation. Despite the allegations to the contrary in Standard's complaint, the relevant information about the Dependent was, of course, disclosed—it was included in the pages attached to the second Employer Disclosure Statement submitted by Dewberry. See Fayetteville Investors v. Commercial Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991) ("[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached pursuant to Rule 10(c), Fed. R. Civ. P., the exhibit prevails."). Standard does not allege that the information contained in the computer printouts was insufficient for its purposes. Rather, it claims that the information was not there at all or was not accessible to Standard when it needed to be.[3] Because the Dependent's information was

---

[3]For example, Standard maintains that the disclaimer on the Employer Disclosure Statement "prevented Standard and its agent Benchmark from learning about the Dependent," a statement that, without further explanation, we find impossible to countenance.

7

quite plainly disclosed to Standard, we affirm the ruling of the district court.

Despite the presence of the Dependent's information in the attachments to the second Employer Disclosure Statement, Standard contends that Dewberry has violated its duty of <u>uberrimae fidae</u>, or "utmost good faith," and that this violation entitles Standard to the relief it requests. More accurately, Standard invites us to adopt, on behalf of the Commonwealth of Virginia, the doctrine of <u>uberrimae fidae</u> in reinsurance cases and then find that Dewberry violated the doctrine. Regrettably for Standard, we must decline.

Virginia has embraced <u>uberrimae fidae</u> in some areas of the law, <u>see, e.g.</u>, <u>Stiers v. Hall</u>, 197 S.E. 450, 454 (Va. 1938) ("<u>uberrima fides</u>" exists between attorney and client), but not yet in the reinsurance context. In addition to our usual reluctance to decide important, novel issues of state law, we avoid deciding more than is necessary to settle the disputes before us. <u>See</u> <u>Chawla v. Transamerica Occidental Life Ins. Co.</u>, 440 F.3d 639, 648 (4th Cir. 2006). In the instant case, we need not decide whether or not <u>uberrimae fidae</u> applies because the doctrine would require no more of Dewberry than would ordinary Virginia insurance law or Standard's Treaty itself.

Under longstanding Virginia law, an insured is required to disclose information asked of him that is material to the insurance coverage. <u>See</u> <u>St. Paul Fire & Marine Ins. Co. v. Jacobson</u>, 48 F.3d

778, 780–81 (4th Cir. 1995) (citing Greensboro Nat'l Life Ins. Co. v. Southside Bank, 142 S.E.2d 551, 555 (Va. 1965)). Information pertaining to matters that would substantially increase the risk of loss to the insurer, such that the insurer would reject the risk or charge an increased premium, is material. See Buckeye Union Cas. Co. v. Robertson, 147 S.E.2d 94, 96 (Va. 1966). The Dependent's medical condition and status as a covered individual were certainly material to Standard's agreement to reinsure Dewberry, and Standard asked for information about individuals like her in its Employer Disclosure Statements. Consequently, Dewberry had a duty under ordinary Virginia insurance law to disclose the Dependent's information.

The agreement between Standard and Dewberry also obligated Dewberry to disclose the Dependent's information. The Employer Disclosure Statement Dewberry submitted detailed the contractual consequences of incomplete or incorrect disclosure. Those consequences included rescission of the reinsurance contract and exclusion of coverage for the person whose information was incompletely or improperly disclosed. Dewberry's agreement with Standard, then, demanded that Dewberry disclose the Dependent's information. Uberrimae fidae would demand no more.

The uberrimae fidae doctrine, as Standard itself describes it, obligates the insured to volunteer information that might bear on the scope of the risk assumed by the insurer. See, e.g.,

9

<u>Contractors Realty Co. v. Ins. Co. of N. Am.</u>, 469 F. Supp. 1287, 1294 (S.D.N.Y. 1979) (noting also that there is "a reciprocal duty on the part of the insurer to deal fairly, [and] to give the assured fair notice of his obligations"). In this case, then, settled Virginia law, the terms of the Employer Disclosure Statement, and the <u>uberrimae</u> <u>fidae</u> doctrine all would require Dewberry to disclose information material to Standard's reinsurance coverage. There is no need for us to decide whether <u>uberrimae</u> <u>fidae</u> applies in this case, just as there would be no need to decide the case using that doctrine were we certain the standard applied.

Even if <u>uberrimae</u> <u>fidae</u> did apply, Standard never explains how it would affect the outcome of this case. Standard did not allege that Dewberry disclosed the information in a manner that violated its duty of utmost good faith (whatever manner that might be).[4] Rather, it alleged that Dewberry's "failure to identify [the

---

[4]In its brief Standard adds a new complaint: that the computer printouts did not identify the Dependent as a new employee. The "BREACH OF DUTY OF GOOD FAITH" portion of its complaint focuses only on Dewberry's alleged failure to identify the Dependent and her high-risk pregnancy at all, not Dewberry's failure to identify her as a new employee. Because this claim is raised only in the brief and not in the complaint itself, we do not consider it on appeal. <u>See</u> <u>Minyard Enters., Inc. v. Se. Chem. & Solvent Co.</u>, 184 F.3d 373, 387 n.15 (4th Cir. 1999). In any event, the Dependent's association with the new employees was not material under the circumstances. Because the new Dewberry employees were covered for a shorter term than the old, the Dependent's association with the new employees, as opposed to the old, would not have substantially increased Standard's risk. It would have decreased it. What was material was whether the Dependent was covered at all, not whether she was covered as a new or old Dewberry employee. <u>See</u> <u>Buckeye Union</u>, 147 S.E.2d at 96.

Dependent] and her complicated high-risk pregnancy on Dewberry's Employer Disclosure Statement" violated that duty. Such a failure to identify the Dependent in response to a direct query would violate the clearly-established, lesser duty under Virginia law and permit relief under the Treaty as well.

Here Dewberry is not an especially sympathetic defendant, but its inconsiderately-answered disclosure statement does not excuse Standard's obligations as reinsurer. Dewberry did not organize the data in its attachments to reflect the questions asked on the Employer Disclosure Statement, and its answers to some of the form's questions could create confusion as to how the attachments related to the form. Standard exaggerates, though, when it complains that Dewberry gave the impression that all questions were completely answered by leaving blank questions on the form when the Dependent's name should have been listed. If all of the questions purported to be answered completely, and the Disclosure Statement itself constituted Dewberry's only disclosure, Standard might have a claim that principles of insurance law require avoidance of the policy. See Phoenix Mut. Life Ins. v. Raddin, 120 U.S. 183, 189–90 (1887) ("Where an answer of the applicant to a direct question of the insurers purports to be a complete answer to the question, any substantial misstatements or omission in the answer avoids a policy issued on the faith of the application."); Williams v. Metro. Life Ins. Co., 123 S.E. 509, 511 (Va. 1924) (adopting a significant

11

portion of the doctrine espoused in <u>Phoenix Mutual</u>). Standard is disingenuous to suggest, however, that a nearly blank disclosure statement appeared to be completely answered such that Standard did not even have to read the attached medical information.

The district court rightly observed that all of Standard's claims rest upon Dewberry's non-disclosure of medical information that Dewberry, in fact, disclosed. Standard's complaint cannot, therefore, state a claim for relief and was properly dismissed. <u>See</u> <u>Venkatraman v. REI Sys., Inc.</u>, 417 F.3d 418, 420 (4th Cir. 2005) (permitting dismissal of a claim under Rule 12(b)(6) when "a plaintiff can prove no set of facts which would support his claim and entitle him to relief").

## III.

For the foregoing reasons, the district court's order is affirmed. Standard's complaint is dismissed.

<u>AFFIRMED</u>